May it please the Court, Gail Ivins appearing on behalf of Petitioner Appellant Anthony Waldrip in this matter. As the Court is aware from the briefing, there are two main arguments presented in this appeal. One has to do with the knowing and intelligent waiver by the Attorney General's Office of the statute of limitations defense and whether it was an abuse of discretion for the district court to essentially override that decision by allowing an amendment to the answer years after the original motion to dismiss was withdrawn. And the second has to do with proper interpretation and application of the Supreme Court's decision in Evans v. Chavez to the facts of this case where but for approximately 28 days, if my calculations are correct, we would have had a timely petition. With respect to the Evans v. Day requirement, the Supreme Court in that decision in a, I'm sorry, Day v. Madonna requirement, the Supreme Court in footnote 11 said that the district court's discretion is confined within the limits stated. As earlier noted, should a state intelligently choose to waive a statute of limitations defense, a district court would not be at liberty to disregard that choice. Well, I guess what I would like you to address from this standpoint, it seems to fall a little bit with your argument into the no good deed goes unpunished in the sense that initially the prosecutor said I'm not going to pursue this because I think, you know, it's not good. But then Evans comes and is definitely a more favorable case for the prosecutor and they say, okay, well, at this point, I am. And then the rock that you have to push uphill on any amendment is abuse of discretion. So I'm not sure, you know, I would hate to, you know, your argument would discourage prosecutors when they don't have the strongest case from, you know, you would say, well, just pursue it no matter what. And that is, I mean, if that were the rule, then that would be the right answer. And I think that in this case, what we have is not all attorney generals were making that very conservative decision. Some of them were arguing that there was no gap tolling, that the gap tolling was too long and they were taking it up, including in Evans v. Chavez, a California case. So the idea that somehow this was out of some deference or some appropriate reticence to not do something that the Ninth Circuit had clearly said they shouldn't be doing just doesn't strike me as consistent. And so we never pass up the opportunities that are good at the time, but then later we take fault with them. And here, I mean, there is intervening case law, you know, that's basically undisputed. So why would it be an abuse of discretion? And I also had a question. You do argue that the petitioner didn't have access to the law library for a portion of the time prior to filing in the California Supreme Court, waiting for the decision in Were there other justifications in the record for the delay? This sort of breaks it into different parts. This is an unusual case, and frankly, I have not found anything on point, despite looking quite carefully, where we have both pro se petitioner proceeding and counsel proceeding. And in the same vein of no good deed goes unpunished, in a sense, we'll be punishing petitioner if we don't allow the court to reach the merits for allowing his appointed counsel to take the lead in filing the petition. Are they pursuing the same thing? Pursuing sort of the same but two different things. The dynamic here was that Mr. Bent, the appellate counsel, was clearly upset, appropriately, when the California Court of Appeals came out and said, the reason you can't reach the momentary possession defense is because it wasn't raised by trial counsel. And he then went out and said, well, okay, then he was ineffective. I mean, we should be able to get to this one way or another. And then he filed in the California Court of Appeals and said, okay, then he's ineffective, and that's why he didn't raise it. Here's his declaration. And the California Court of Appeals said, no, it was raised. And this former district attorney, deputy attorney general said, okay, it's either not raised or it is raised, so here's my petition free hearing, which the court then rejected as not a proper, you know, without jurisdiction. And then he had gone into private practice and was doing civil cases, and we've, you know, put those details in his declaration, and he did not file for eight months while, at the same time, Petitioner was, you know, trying to find out why things weren't moving. And eventually, Mr. Bent did file, even though the Supreme Court had not yet decided Andrade. And basically, I have done, you know, put in, you know, I interviewed Mr. Bent. He prepared his declaration. We submitted it to the magistrate judge, and that is the reason. I mean, that is the reason why it was not filed for eight months, was that he was also busy with other cases. And if this were some sort of strict IAC analysis, I think we would be out of luck, but it's not. The analysis is, was the delay explained and or justified to the extent that California would have allowed the filing as a timely filing? And I think if that's the goal. Yes. Counsel, one of the explanations put forward is that part of the delay was due to counsel's waiting for the resolution of the street three strikes issue in Lockyer versus Andrade. But it appears that there was a filing three months before the Supreme Court's decision in that case. So that seems like a like a false explanation. What's your answer to that? My impression? I was wait, I was waiting. I was waiting for something to happen. But then you look at the facts and they filed before it happened. I think that the time was running and people were anxious about getting something on file. And so he did just file what he had filed before. I mean, this was not a work of art that I can say to the court, look at how much time and energy he invested in doing a better draft and actually waiting. And I believe that his declaration, it states that he was also in part waiting. And that, I believe, is in the last paragraph of his declaration. So that was, according to what Mr. Bent said, it was also part of why he delayed. But it seems to me a fair reading of the declaration had more to do with what he was doing in his new private practice, even though he was committed to helping Mr. Waldrop pursue what he clearly saw as an unfair result in the California Court of Appeals. That strikes me as a bit of a make wait explanation. It is the explanation that Mr. Bent provided to me, Your Honor. And I've done my best to present that to the court. You play the cards you're dealt sometimes. Yes, Your Honor. That's a card you have here. And I think that the important thing for this court is that what we're looking at is, when we get to the Evans v. Chavez issue, we're looking at what would California do. And I have not found a case that certainly says this would be untimely. And the presumption that the United States Supreme Court seems to want to impose on California, and I really do understand their frustration, having litigated it from the other side where we're talking about procedural defaults and bars, and it's hard to tell what California means when they do things. But there are many cases holding that delays are appropriate, that, you know, two and a half years, three years, and we are now in this pincer motion, essentially, between what the Supreme Court appears to view as an uncooperative California court and legislature, and a Supreme Court's desire for clarity and finality. So kind of what either way that this court decides it, what you're saying, is it really probably merits publication? That probably is true, and it might also merit the court entertaining the suggestion of the U.S. Supreme Court and possibly certifying a question to the California Supreme Court of Appeals, I mean, to the California Supreme Court. And I would like to reserve the rest of my time for rebuttal. Thank you. Please, the court. California Deputy Attorney General. Can you keep your voice up a little bit? California Deputy Attorney General Yan Li for Respondent. Just on the motion to amend issue, I'd just like to point out that the factors to consider in ruling on the motion to amend here all favor amendment. There was no bad faith by Respondent. When we first asserted the statutory limitations defense, it was because petitioner had not told us about the Superior Court petition. And before we had known about that, we had argued that the 13 months delay between the Court of Appeal petition and then the subsequent California Supreme Court petition was delayed inexcusably. Once we learned about the Superior Court petition, the delay was reduced to the Supreme Court petition. Now, I think counsel for Mr. Waldrip, she narrows the time down to something like 40 to 45 days, not eight months. What, can you explain that? I'm not sure how she came with the 45 days. The way I calculated it is that from the time the Supreme Court petition was denied, and then the filing of the California Supreme Court, filing in the California Supreme Court by counsel, I don't know about the 45 days. You might best ask her about that, so. Well, what's your position about what we should do about the pro se habeas filing in the Los Angeles Superior Court? How should we, do we, whether we should ignore that? Or should we focus on the entire 13-month period in which the petitioner's state habeas is, quote-unquote, pending from the California Court of Appeal when it issued its denial on November 13, 2001, to December 11, 2002, or do we go by the date of the California Supreme Court filing? How do we look at all those? The Superior Court filing, which was in March 2002, petitioner would get tolling for that petition, the Superior Court petition. We argued that petitioner would not be entitled to the interval tolling between the first Court of Appeal petition and then the Superior Court petition because it was filed in a lower court. And we also argued that he would not be entitled to interval tolling between the denial of the Superior Court petition and the filing of the California Supreme Court petition because the delay of eight months was in excess. Well, now for the eight months, I think the petitioner does have in the record an argument about the denial of access to the law library. What other arguments are there in the record on that issue? Just for one thing, when petitioner filed his petitions in the state court, counsel did not offer any explanation for his delay in filing a petition that was basically 13 months past the conviction date. When petitioner filed, per se, a supplemental petition, he did offer an explanation, which was basically there was no delay because it wasn't, the time hasn't been that long since he had learned about the facts. In federal court, petitioner offered, as your Honor suggested, lockdowns and other reasons by counsel as to why the petition was delayed. I'm sorry, I forgot your question. Well, I guess I'll go to another area. I think you've answered what I was getting at. But California makes it difficult in the sense of that this reasonable, and having been a California judge too, it sort of terrorizes everyone. I mean, how do we evaluate that? Would you agree with counsel for being exactly on point on these facts? I don't know if I'm exactly on point on these facts, but as far as the reasonableness determination, California courts are clear that reasonableness is the rule as far as timeliness, and that if the delay is substantial, which is measured from the time petitioner or counsel knew or should have known the facts or the legal causes underlying his claim, if that delay is substantial, then they have to show good cause for the delay. I know petitioner has submitted various cases that show delays longer than eight months to be reasonable. But in all of those cases, the delays were explained or justified. Or in other cases, the cases were cited that came before Clark and Robbins. And since Clark and Robbins, California court has clearly stated that Was there anything here in the adjudications by the California courts that indicated they determined that the filings were untimely? No. All the denials were either reasoned in the Court of Appeal and also in the Superior Court, or in the California Supreme Court, it was a silent denial, which says that there was no determination that we can discern, which is exactly what happened in Evans v. Chavis. In that case, the denial in the California Supreme Court was a silent denial, what we would call, and the court was clear that a silent denial necessarily did not mean that it was on the merits, and that it was a part of the final course to determine, based upon the reasons offered by petitioner, whether that the delay was excused. And in Evans, the court looked at the prison lockdowns, access to libraries, different things, and found that there were six months of inexcusable delay, and that, according to the court, was too long. In our case, the prison lockdown, the delays that pertained to petitioner, that occurred before the Supreme Court denial order was issued. So once the denial order of the Supreme Court was issued, the eight months passed, and I believe petitioner also alleged that he was not aware of any time in the standard in the Supreme Court, in the California courts, otherwise he would have filed pro se. However, he did file a pro se petition in the Superior Court before the California Supreme Court. He filed a form petition, and in that petition, he gave a reason for his delay. He said there was a recent case law, which constituted why he was filing his Superior Court petition months past his conviction date. So for him to say now that he was not aware of any time in his standard, I think is a little bit incredulous. The reason given by counsel that he was waiting for Andrade, as just Judge Trott pointed out, he filed a petition three months before Andrade came out. The petition he filed was exactly, just about exactly the same as a petition he filed before the conviction became final. So he basically used the same petition that he filed 13 months before, and filing it in the California Supreme Court without any explanations for his delay at all. And also, as I mentioned, petitioners claimed that he was not aware of the time in his standard, is also incredible. So the 8-month delay under Evans is just not sufficiently explained or justified in order to grant interval tolling in this case. Sorry. Anything further? Unless the Court has any other questions, I'm prepared to see. Thank you. Rebuttal. Thank you. With regard to the additional reasons in the record, Mr. Waldrop's declaration is at ER 302, the paragraph 9, which talks about calls from the family to Mr. Bent, asking why things weren't happening, and suggests the pressure that was being put on to move things along, and that no one told him it was a deadline, Mr. Bent didn't tell him there was a deadline, which, of course, he actually couldn't deny, because there is no deadline, although there's a standard of reasonableness, and that if there had been a deadline, he would have gone ahead and filed rather than relying on his appointed counsel. And I guess as appointed counsel and someone who's been doing this work for a very long time, I certainly would like to encourage people to rely on their attorneys to file their habeas petitions if possible. So I would hate to think that the result of this is a statement that you must go pro se and go within 60 days. But that might be where the Supreme Court and the California courts put us. But the statement may be for the attorney to file. And if there's clarity going forward, I don't know that people would object in non-capital habeas cases to some clarity. I certainly would enjoy some. But in the meantime, it seems that Mr. Waldrop is the one who's suffering from a lack of clarity. My 28-day calculation. Nothing, according to the magistrate judge, nothing counted because it all happened before the conviction was final. The work in the California Court of Appeals by appellate counsel until the statute started running, which is 40 days after the California Court of Appeals decision on the 27th of November. And 107 days passed until March 14th, which is when, because Mr. Bent had not included the Eighth Amendment issue, Mr. Waldrop filed that pro se. That was pending for two weeks. It was denied on the 28th. The eight months that the attorney general is referring to then starts on 328 and runs until the filing in the California Supreme Court by appellate counsel. That then pens in the California Supreme Court with the supplemental petition filed by Mr. Waldrop, who's now starting to file supplemental petitions, until it is decided on June 18th, 03. And then 28 days goes until the federal petition is filed on 7-16-03. And I fail to see any reason why counsel couldn't have filed this immediately. And that's a fair question, Your Honor, and a fair complaint. The reasons that Mr. Bent gave me are contained in detail in his declaration and have to do with his transition from a criminal appellate practice to a very full-time civil practice. And he told Mr. Waldrop that he was waiting for the Supreme Court to decide on Andrade, but then eventually he filed before the decision came down. He did start waiting when cert was granted. He didn't even file an Eighth Amendment claim, though, did he? No, he did not. And even though Mr. Waldrop... Just waiting for Andrade, to me, is almost an admission that nothing happened and that it could have. Well, clearly, in hindsight, given what appellate counsel ended up doing, he could have filed it the same day, since he essentially didn't change the petition. But I think that... That's right. There's absolutely nothing that impeded that at all. So I fail to see any reasonable excuse here. I think that the analysis needs to be with regard to Mr. Waldrop's diligence, because I don't have any case law that says, essentially, we're going to look at both of them and somehow merge them. We need to look at Mr. Waldrop's personal diligence. And in his declaration, he explained why he relied on appellate counsel to do what he said he was going to do. And Mr. Waldrop was diligent. And he waited, and he was assured it would be fine. And as soon as he saw that Supreme Court petition that didn't raise his Eighth Amendment claim, he filed a supplemental petition. And if we look at... What case do you have that supports the argument you just made? Nothing, Your Honor. I have no case. This will maybe be the case. We don't have any law that I know of. But my 28 days, just to finish with Judge Callahan's question, if it was... We're 28 days over is what the problem is. And so if we came up with... If the Supreme Court finds the California system so appalling and so difficult, and they want to back this up and interpret 2244D and say that since California is so problematic, we're going to come up with a new rule for California, and instead of having a what would California do rule, under which I think I win, frankly, and we have a rule that says we're just going to tap on 60 days and everyone's now on notice, we're timely. We're timely if we tap on 30 days. I'm just saying that Mr. Waldrop is not getting his day in court, in federal court, because of 28 days. Thank you. Thank you. Thank both counsel for the argument. The case just argued is submitted.
judges: Trott, Clifton, Callahan